**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JUNE JUZHEN SHI, | |
| Plaintiff, | Case No. |
| v. | |
| GTV MEDIA GROUP INC., SARACA MEDIA GROUP INC., and WENGUI GUO, | **COMPLAINT** |
| Defendants. | **JURY TRIAL DEMANDED** |

1.     This is an action to recover for the sale of unregistered securities and the fraudulent procurement of their purchase price.  The securities were sold to Plaintiff June Juzhen Shi by Defendants GTV Media Group, Inc. ("GTV"), Saraca Media Group Inc. ("Saraca"), and Wengui Guo ("Guo") (collectively, the "Defendants").

## PARTIES

2.     Plaintiff June Juzhen Shi is an Illinois resident.  Plaintiff invested $160,000 into Defendants' fraudulent scheme by wiring this sum to Defendants Saraca and Guo's designated receiving account in the amounts of $100,000 on May 8, 2020 and $60,000 on May 22, 2020.

3.     Upon information and belief, Defendant GTV Media Group Inc. is a Delaware corporation with its principal place of business in New York.

4.     Upon information and belief, Defendant Saraca Media Group Inc. is a Delaware corporation with its principal place of business in New York.

5.     Upon information and belief, Saraca is the parent company of GTV.

1

6.      Upon information and belief, Defendant Wengui Guo is and was at all times relevant hereto a foreign national residing in the State of New York.  Defendant Guo controls Saraca and GTV.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over the claims herein arising under the Securities Act of 1933, 15 U.S.C. § 77v(a), pursuant to 28 U.S.C. § 1331 and over the remaining claims arising under Illinois law pursuant to 28 U.S.C. § 1367.

8.      This Court has personal jurisdiction over the Defendants because each defendant purposefully availed itself or himself of the privilege of conducting business activities within this state, thus invoking the benefits and protections of the laws of Illinois.

9.      This Court similarly has personal jurisdiction over Defendants because each defendant committed activities in violation of law in this state and judicial district.

10.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to this cause of action occurred in the Northern District of Illinois.

## BACKGROUND

11.      Guo incorporated GTV on April 17, 2020.  Shortly thereafter, Guo and GTV began to solicit investors to invest in GTV by purchasing stock in the company (the "Offering").

12.      The securities offered as part of the Offering were neither registered nor subject to any exemption from registration as is required under the Securities Act of 1933 (the "Securities Act") and the Illinois Securities Law of 1953, 815 ILCS 5/1, *et seq.* (the "Illinois Securities Law" and, together with the Securities Act, the "Acts").

13.     GTV, as seller, and Saraca and Guo, as entities who substantially participated in and contributed to the conduct of the Offering, violated the Securities Act and the Illinois Securities Law through their sale of unregistered securities.

14.     After being solicited by Guo, Plaintiff signed a Subscription Agreement on May 1, 2020 and wired $100,000 on May 8, 2020 and $60,000 on May 22, 2020 to Saraca, the designated recipient of the funds.  None of the Defendants, however, countersigned and returned the Subscription Agreement to Plaintiff.

15.     Defendants have never delivered to Plaintiff the securities she purchased, nor have they returned the funds she transmitted to Saraca.  Accordingly, Defendants engaged in a fraudulent scheme to procure her purchase price in exchange for nothing and have unjustly enriched themselves by keeping her funds.

16.     Plaintiff is, therefore, entitled to rescission of the amount of her purchase ($160,000), together with statutory interest and attorneys' fees and other relief.

## FACTS

17.     GTV is the brainchild of Guo, a wealthy self-described political dissident from China with a large social media following in the United States.

18.     Guo conceived of GTV to be a video-streaming social media platform, similar to Tik Tok, for user-generated political content.

19.     On April 15, 2020, the GTV app was launched in the Apple App Store and was immediately well received.

20.     On April 20, 2020, Guo recorded a video and released it on the platform giving instructions to potential private placement investors on how to invest in GTV.  Through this

advertisement, Guo represented that investors would receive shares of stock in exchange for a monetary investment.

21.     In the video, Guo identified several individuals who would purportedly be directors of the company.

22.     Guo also claimed the video was limited to private investors, not the public, but the following day, he uploaded the same video to YouTube.

23.     YouTube is the world's second most popular social media platform with over 1.9 billion users.

24.     Neither Guo nor the other Defendants imposed any restrictions that would limit members of the public from viewing the YouTube video advertising securities and soliciting investments.

25.     Plaintiff viewed Guo's YouTube video on or about April 22, 2020.

26.     Along with the video, Guo posted a link to download investment documents, including a subscription agreement, non-disclosure agreement, a set of "Investment Procedure Guidelines" with instructions on how to invest, and other investment-related documents.  There were no restrictions on any member of the public accessing these documents.

27.     Between April 11, 2020 and May 9, 2020, Guo recorded numerous video presentations touting the opportunity to invest in GTV and soliciting investments.  Guo represented to investors that they would receive shares of stock in exchange for a monetary investment.  Guo also touted a form of cryptocurrency that would be associated with GTV called "G-Coin," which investors would allegedly receive and which, according to Guo, would become very valuable, backed up by the reserves of gold in several countries.

28.     On April 25, 2020, Plaintiff was contacted in her capacity as a software developer to assist in solving GTV's technological difficulties.

29.     On April 29, 2020, Plaintiff was made part of the project, called Himalaya Finance Research System, seeking to develop an application like that of IntelTrak by RWR Group, which was a platform that Guo had previously paid to utilize. Guo wanted to develop a similar platform for GTV to use as its own.

30.     In early May 2020, Plaintiff was hired by Saraca to work on this project as a contractor and was promised an hourly rate of $80/hour for her labor.

31.     By May 19, 2020, Plaintiff, the project manager, and two more software engineers communicated daily in an attempt to develop this software platform. Plaintiff ultimately logged 138 hours working on this project, which totals $11,040 for her time. She has never been paid for her work on this project.

32.     On June 14, 2020, Plaintiff was told to stop her work on the project because there were no funds for it and that she should not expect to be paid.

33.     On June 16, 2020, Plaintiff contacted a member of GTV and inquired about being paid for her time developing the software. This individual informed Plaintiff that GTV has the funds and would pay her for her work.

34.     During the course of her work as a contractor for the software development, Plaintiff was also solicited to be an investor in GTV by, among other means, viewing the publicly available video Guo posted to YouTube on April 21, 2020.

35.     On May 1, 2020, Plaintiff signed a Subscription Agreement to invest as a private placement investor in GTV. None of the Defendants ever signed, executed or accepted that agreement.

36.     Nevertheless, in reliance upon the Subscription Agreement and Defendants'
several, repeated representations promising delivery of GTV stock in exchange for a monetary
investment, Plaintiff wired $100,000 on May 8, 2020 and $60,000 on May 22, 2020 to Saraca as
designated recipient in exchange for stock in GTV.

37.     On May 13, 2020, GNews, a website connected to GTV that is under Guo's
control, published an article encouraging readers to invest in GTV.  The article stated in Chinese:
"The current financing stage of GTV is the earliest stage and the stage with the highest return.
The investment risk corresponding to this stage is of course the largest theoretically, but the GTV
fundraise is actually a risk-free act of gifting money [to investors]."

38.      The last line of the article stated, in bold, in Chinese: "Mr. Wengui [Guo] let his
comrades invest in GTV and buy G coins, which is a reward for the sacrifices and contributions
made by all the comrades who broke the news of the revolution.  There is no business risk, you
just have to believe in it."

39.     On June 2, 2020, Guo announced in a publicly posted video that the "private
placement" had ended with him successfully raising hundreds of millions of dollars.  He claimed
that GTV was currently valued at *$2 billion*.

40.     However, despite claiming that the private placement was over, Guo continued to
solicit investments, including through at least one more YouTube video and an article on his
website, Gnews.org, through July 2020.

41.     The securities sold in the Offering were neither registered as required under the
Acts, nor subject to any exemption from registration.

42.     Typically, private placement securities issuers make Form D filings with the U.S. Securities and Exchange Commission claiming that their private placement sales were exempt from registration because they comply with the restrictions in 17 C.F.R. § 230.506 ("Rule 506").

43.     On information and belief, Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in violation of the restrictions set forth under Rule 506.

44.     An issuer may rely on the Rule 506(b) safe harbor under Section 4(a)(2) of the Securities Act only if it does not use general solicitation or advertising to market the securities. As the foregoing recitation of facts illustrates, Defendants knowingly offered and sold, or were willfully blind to the fact that they offered and sold, the securities in the Offering through a general solicitation and, furthermore, used general advertising to solicit investors and conduct the sale.  They were, therefore, not entitled to rely on Rule 506(b).

45.     That leaves Defendants with Rule 506(c) as the only potential exemption they may be able to invoke.

46.     Issuers who wish to rely on the Rule 506(c) exemption may engage in general investment solicitation "provided that the sales are limited to accredited investors and an issuer takes reasonable steps to verify that all purchasers of the securities are accredited investors."

47.     Defendants did not take reasonable steps to verify that purchasers of GTV securities were accredited investors. To the contrary, Defendants told potential investors to make their own judgments as to whether they were accredited.

48.     Similarly, Defendants find no safe harbor in the exemptions to registration required by the Illinois Securities Law, 815 ILCS 5/4.  None of the exemptions enumerated

therein apply to the Offering, not least because the Offering was made by means of general advertising and general solicitation.

49.     In short, the GTV securities made in the Offering were not exempt from registration.

50.     Nevertheless, Defendants solicited and accepted from Plaintiff $160,000 in exchange for GTV securities.  The securities were never delivered to Plaintiff.

51.     Plaintiff attempted on several occasions to obtain a return of her money from Defendants.  On June 22, 2020, Plaintiff engaged in a text message exchange with Defendant Guo using the phone number for Defendant Guo provided in the Investment Procedure Guideline and provided by him in the April 21, 2020 YouTube video.  During this communication, Plaintiff asked Guo to return her $160,000.  Guo responded by asking Plaintiff to send her bank account information to a gtv.org email address "and indicate you would like to receive a refund.  We would double check if we have received your 160k and process accordingly, thank you."  Plaintiff provided the requested information to the gtv.org email address the same day but received no response.  On August 18, 2020, Defendants, using the gtv.org email address, wrote Plaintiff saying only, "Hi.  Please also provide the address of the account holder.  Thank you."  Plaintiff responded the next day with the requested information but never heard from Defendants again.

52.     When it became clear Plaintiff would never receive the bargained-for securities or the return of her money as promised, Plaintiff, through counsel, demanded return of her funds on September 25, 2020.

53.     Despite numerous assurances from GTV—including by counsel and a member of GTV's board of directors—that GTV had "identified and verified the funds sent by" Plaintiff

and would return them "as soon as possible," as of the filing of this Complaint, Plaintiff has not received the return of her funds. Nor have defendants responded to Plaintiff's continued efforts, through counsel, to seek the return of the funds. Instead, Defendants have unjustly retained possession of Plaintiff's money.

## COUNT I

**Violation of Sections 5 and 12(a)(1) of the Securities Act of 1933**
**(Against All Defendants)**

54.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 – 53 of this Complaint.

55.     This Count is brought pursuant to Sections 5 and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e and 77l(a)(1), against all Defendants.

56.     Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1), defines the term "security" as including any "stock" or "evidence of indebtedness" or "investment contract."

57.     The interests in GTV marketed by Defendants are securities within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

58.     Section 5(a) of the Securities Act, 15 U.S.C. § 77e(a), provides:

Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1)     to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2)     to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale.

59.     Section 5(c) of the Securities Act, 15 U.S.C. § 77e(c), provides:

It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce

or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 8.

60.     No registration statement was filed or in effect under the Securities Act regarding the securities offered to Plaintiff by Defendants, and no exemption from registration existed regarding those securities.

61.     When Defendants solicited Plaintiff to invest in GTV, and provided her the Subscription Agreement, they directly and indirectly:

(a)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and/or

(c)     made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy securities, through the use or medium of a prospectus or otherwise,

without a registration statement having been filed or being in effect as to such securities.

62.     By reason of the foregoing, Defendants violated Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. § 77e(a) and 77e(c).

63.     Section 12(a)(1) of the Securities Act, 15 U.S.C. § 77l(a)(1), provides:

Any person who—

(1) offers or sells a security in violation of section 5 of this title, . . .

shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

## COUNT II

### Violation of Sections 5 and 15 of the Securities Act of 1933
### (Against Defendant Guo)

64.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs

1 – 53 of this Complaint.

65.     Section 15(a) of the Securities Act, 15 U.S.C. § 77o, provides:

(a) Controlling persons—

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under section 11 or 12, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

66.     Guo controlled Saraca and GTV within the meaning of Section 15(a) of the

Securities Act.

67.     Guo is jointly and severally liable with and to the same extent as GTV and Saraca

for their violations of Sections 5(a) and 5(c) of the Securities Act.

## COUNT III

### Violation of Section 17(a) of the Securities Act of 1933
### (Against All Defendants)

68.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs

1 – 53 of this Complaint.

69.     Section 17(a) of the Securities Act prohibits fraud and misrepresentations in the

offer or sale of securities.

70.     Section 17(a)(1), 15 U.S.C. § 77q(a)(1), provides:

It shall be unlawful for any person in the offer or sale of any securities (including security-based swaps) or any security-based swap agreement (as defined in

section 3(a)(78) of the Securities Exchange Act) by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly—

(1)     to employ any device, scheme, or artifice to defraud[.]

71.     Defendants engaged in a scheme to defraud Plaintiff through their various acts and representations, in violation of Section 17(a)(1) of the Securities Act, to Plaintiff's harm.

## COUNT IV

### Violation of Section 5 of the Illinois Securities Law of 1953
### (Against All Defendants)

72.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 – 53 of this Complaint.

73.     Section 2.1 of the Illinois Securities Law, 815 ILCS 5/2.1, defines the term "security" as including any "stock" or "evidence of indebtedness" or "investment contract."

74.     The GTV securities included in the Offering to Plaintiff were "securities" as that term is defined in Section 2.1 of the Illinois Securities Law.

75.     Section 5 of the Illinois Securities Law, 815 ILCS 5/5, provides:

All securities except those set forth under Section 2a of this Act, or those exempt under Section 3 of this Act, or those offered or sold in transactions exempt under Section 4 of this Act, or face amount certificate contracts required to be registered under Section 6 of this Act, or investment fund shares required to be registered under Section 7 of this Act, shall be registered either by coordination or by qualification, as hereinafter in this Section provided, prior to their offer or sale in this State.

76.     The securities purchased by Plaintiff from Defendants were not registered prior to their offer or sale to Plaintiff.

77.     Defendants offered to sell and purported to sell to Plaintiff within the State of Illinois in non-exempt transactions, non-exempt securities not registered under the Illinois Securities Law.

12

78.    By reason of the foregoing, Defendants violated Section 5 of the Illinois

Securities Law.

79.    Section 13(A) of the Illinois Securities Law, 815 ILCS 5/13(A), provides:

> Every sale of a security made in violation of the provisions of this Act shall be voidable at the election of the purchaser exercised as provided in subsection B of this Section; and the issuer, controlling person, underwriter, dealer or other person by or on behalf of whom said sale was made, and each underwriter, dealer, Internet portal, or salesperson who shall have participated or aided in any way in making the sale, and in case the issuer, controlling person, underwriter, dealer, or Internet portal is a corporation or unincorporated association or organization, each of its officers and directors (or persons performing similar functions) who shall have participated or aided in making the sale, shall be jointly and severally liable to the purchaser as follows:

> (1)    for the full amount paid, together with interest from the date of payment for the securities sold at the rate of the interest or dividend stipulated in the securities sold (or if no rate is stipulated, then at the rate of 10% per annum) less any income or other amounts received by the purchaser on the securities, upon offer to tender to the seller or tender into court of the securities sold or, where the securities were not received, of any contract made in respect of the sale[.]

> If the purchaser shall prevail in any action brought to enforce any of the remedies provided in this subsection, the court shall assess costs together with the reasonable fees and expenses of the purchaser's attorney against the defendant.

80.    Defendants were issuers, controlling persons, dealers, or other persons by or on

behalf of whom the sale to Plaintiff was made, or were salespersons who participated or aided in

making the sale, or were officers and directors of GTV who participated or aided in making the

sale of unregistered securities.

81.    Plaintiff notified Defendants in writing that she elected to void her investment and

sought rescission within six months of her purchase of the unregistered securities from

Defendants.

82.    As such, Defendants are liable to Plaintiff under Section 13 of the Illinois

Securities Law.

## COUNT V

**Common Law Fraud**
**(Against All Defendants)**

83.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 – 53 of this Complaint.

84.     Defendants made false representations of material fact to Plaintiff through their solicitation of her investment.

85.     Defendants made these knowingly false representations of material fact with the willful and fraudulent intent to induce reliance on them and, by inducing that reliance, secure Plaintiff's investment.

86.     Plaintiff did not know that Defendants' representations were false at the time she provided funds in exchange for the securities offered by Defendants.  Rather, Plaintiff believed that Defendants' representations were true.

87.     Plaintiff did, in fact, rely on Defendants' false representations and omissions of material fact in making her decision to make her investment in GTV.

88.     Plaintiff's reliance on Defendants' false representations and omissions were reasonable.  Plaintiff had no reason to doubt or disbelieve Defendants' representations at the time they were made.

89.     Defendants' lies were not made or accepted casually or carelessly, but rather took place within the context of formal arm's length transactions.

90.     Plaintiff lost all of her investment in GTV and was never issued the promised securities.

91.     Had Plaintiff known the truth, she would not have invested in GTV.  Thus, Plaintiff's loss was proximately caused by Defendants' misrepresentations, omissions, and deceptive scheme.

## COUNT VI

### Unjust Enrichment
### (Against All Defendants)

92.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 – 53 of this Complaint.

93.     Plaintiff conferred a benefit on Defendants when she wired $160,000 to Saraca as the designated recipient of the investment funds on May 8, 2020 and May 22, 2020, the total amount of which was derived from the fraudulent scheme orchestrated by Defendants.

94.     Defendants had knowledge of the benefit they received from Plaintiff as a result of the wired investment funds and voluntarily accepted and retained the benefit conferred.

95.     It is inherently unfair and inequitable, violating fundamental principles of justice, equity, and good conscience that Plaintiff's funds, procured through Defendants' fraudulent scheme, are retained by and used to personally benefit Defendants, rather than being returned to Plaintiff.

96.     As a direct and proximate result of Defendants' retention of Plaintiff's funds, Plaintiff has been damaged or diminished and, under the circumstances, equity dictates that Defendants should return the funds and turn over any assets they may have acquired with those funds.

## COUNT VII

### Implied Contract/Quantum Meruit
### (Against Defendant Saraca)

97.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 – 53 of this Complaint.

98.     Defendant Saraca received a benefit from Plaintiff's rendering of software development services to Plaintiff's detriment.

99.     Plaintiff received no compensation for rendering such software development services.

100.     Accordingly, Plaintiff is entitled to recovery in *quantum meruit* for services rendered under the implied contract between Plaintiff and Defendant Saraca.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

A.     Declaring that Defendants offered and sold unregistered securities in violation of the Securities Act of 1933 and the Illinois Securities Law of 1953;

B.     Awarding Plaintiff the remedy of recovery of the consideration paid for the securities in the amount of $160,000, together with statutory interest and reasonable attorneys' fees, against all Defendants, jointly and severally;

C.     Awarding Plaintiff the equitable remedy of compensation for her software development services in *quantum meruit* in the amount of $11,040;

D.     Punitive and consequential damages in an amount to be determined at trial; and

E.     Such other and further relief as this Court may deem just and proper.

Date: March 12, 2021

Respectfully submitted,

*/s/ Steven A. Block*
Steven A. Block (6269433)
Natalie M. Gabrenya (6326926)
THOMPSON HINE LLP
20 N. Clark Street, Suite 3200
Chicago, Illinois 60602
(312) 998-4242
Steven.Block@ThompsonHine.com
Natalie.Gabrenya@ThompsonHine.com

*Attorneys for Plaintiff June Juzhen Shi*

17